UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| Irelis Vargas, on behalf of her minor child, J.P., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CAUSE NO. 2:20 CV 212-PPS |
| ) | |
| KILOLO KIJAKAZI, ) | |
| Acting Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Irelis Vargas, on behalf of her minor child J.P., seeks judicial review of the Social Security Administration's decision denying J.P.'s application for Supplemental Security Income. At the time of the hearing before the Administrative Law Judge, J.P. was 7 years old and in second grade. [Tr. 79-80.][1] In his written decision, the ALJ found that J.P. was not disabled under section 1614(a)(3)(A) of the Social Security Act. Specifically, the ALJ found J.P. does not have an impairment or combination of impairments that meets, medically equals, or functionally equals the severity of a listing impairment. [Tr. 48-50.] Additionally, the ALJ determined that J.P. had a marked limitation in the functional domain of "attending and completing tasks," but less than marked limitation or no limitation in the other domains; and therefore, he was not disabled. [Tr. 57-64.]

---

[1] Citations to the record will be indicated as "Tr. __" and indicate the pagination found in the lower right-hand corner of the record found at DE 12.

During the hearing before the ALJ, J.P.'s mother (who was not represented by counsel at the time) testified to her son's attention deficit and hyperactivity disorder (ADHD), his difficulties in school (including learning difficulties, hyperactivity, and an inability to focus), his disruptiveness and impulsivity, as well as his insomnia and verbal tics (including making noises with his throat for approximately one year and then after a medication change, making gasping sounds), and the fact that J.P.'s psychiatrist believed he was probably developing Tourette's syndrome. [Tr. 81-86.]

Vargas argues the Commissioner erred in finding that J.P.'s Tourette's syndrome and insomnia were not severe impairments, and the ALJ's functional equivalency analysis was contrary to the evidence and based on flawed medical opinions. While I'm not in a position to say definitively that J.P.'s Tourette's syndrome and insomnia must be considered severe impairments under the regulations, I do recognize that the ALJ committed error when he failed to acknowledge the objective evidence of these impairments in the medical record, failed to more thoroughly explain his conclusion that they weren't severe impairments, and failed to analyze or explain how they do not support greater limitations in the domains of interacting and relating with others and attending and completing tasks.  Therefore, I will **REVERSE** the ALJ's decision and **REMAND** on this issue.

## Background

The ALJ's decision contains a thorough review of the facts and medical evidence in this case, so I will not repeat them here. In denying J.P.'s application, the ALJ

employed the three-step sequential evaluation process for determining whether a child is disabled. *See* 20 C.F.R. § 416.924(a). First, the ALJ found that J.P. was not engaged in substantial gainful activity. *Id.* § 416.924(b). Second, the ALJ considered whether J.P.'s impairments were severe, which for a minor involves determining whether he "ha[s] a medically determinable physical or mental impairment or combination of impairments that causes marked and severe functional limitations, and that can be expected to cause death or that has lasted or can be expected to last for a continuous period of not less than twelve months." 20 C.F.R. § 416.906. The impairment or combination of impairments must meet or medically equal the criteria of a listing or, in the alternative, functionally equal the listing. 20 C.F.R. § 416.924(d), 416.926a. To functionally equal a listing, the impairment must have a "marked " limitation in two domains of functioning or an "extreme" limitation in one domain of functioning. 20 C.F.R. § 416.926a. The domains of functioning are: acquiring and using information; attending and completing tasks; interacting and relating with others; moving about and manipulating objects; caring for yourself; and health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi).

The ALJ found that J.P. had several severe impairments, including ADHD, asthma, borderline intellectual functioning/learning disorder, and oppositional defiant disorder (ODD). Next, the ALJ considered whether J.P.'s impairments met, medically equaled, or functionally equaled an impairment described in the children's Listings

found in 20 C.F.R. Part 404, Subpart P, App. 1. 20 C.F.R. §§ 416.924(d), 416.925. He found they did not.

## Discussion

Before addressing the arguments made by the parties, let's start with some basics on what my role is in this process. It is not to determine from scratch whether or not J.P. is disabled and entitled to benefits. Instead, my review of the ALJ's findings is deferential, to determine whether the ALJ applied the correct legal standards and whether the decision is supported by substantial evidence. *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012); *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010); *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). If substantial evidence supports the Commissioner's factual findings, they are conclusive. 42 U.S.C. §405(g). "Evidence is substantial if a reasonable person would accept it as adequate to support the conclusion." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). "Substantial evidence" is more than a "scintilla" of evidence, but it's less than a preponderance of the evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). So the review is a light one. But of course, I cannot "simply rubber-stamp the Commissioner's decision without a critical review of the evidence." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

I agree that the first issue raised by Vargas, regarding the ALJ's consideration of J.P.'s Tourette's syndrome and insomnia, requires remand. The Seventh Circuit has "repeatedly held that although an ALJ does not need to discuss every piece of evidence in the record, the ALJ may not analyze only the evidence supporting [his] ultimate

conclusion while ignoring the evidence that undermines it." *Moore v. Calvin*, 743 F.3d 1118, 1123 (7th Cir. 2014).

In support of the ALJ's conclusion that J.P.'s diagnoses of Tourette's syndrome and insomnia are not severe impairments, the ALJ stated:

> As for the claimant's alleged 'tics,' [J.P.'s mother] generally reported them, but the doctors did not note any during appointments (Exhibit 9F/5). Additionally, [J.P.'s mother] eventually stopped reported [sic] them as a side effect. Concerning the claimant's insomnia, although [J.P.'s mother] reported it during his medication trials earlier on in his records, she reported that melatonin was helping the claimant sleep (Exhibit 6F/10). Therefore, the undersigned finds these diagnoses are not severe impairments.

[Tr. 48.] The problem is, this isn't a fair characterization of the evidence. Exhibit 9F/5, cited by the ALJ, are progress notes by Psychiatrist Dr. Kirti Ramnivas dated September 17, 2018, where she records that "tics were not observed during *this* interview." [Tr. 624 (emphasis added).]

But the month before, the same doctor *did* note J.P.'s facial tics. Dr. Kirti Ramnivas stated in her progress notes dated August 13, 2018, that J.P.'s mother "observed him to have significant vocal tics this summer. He is constantly clearing his throat, *which has been observed*. In the past, he had blinking episodes." [Tr. 467 (emphasis added).] Dr. Ramnivas diagnosed J.P. with Tourette's disorder. [Tr. 468.] About a year earlier, Dr. Ramnivas noted that J.P. had a "transient tic disorder." [Tr. 486.] At that visit, Dr. Ramnivas noted that his mother "observed some vocal and motor tics this

5

summer. There [sic] were seen occasionally. However, once she started the medication after school reopened 1 week ago, the tics have been observed with increased frequency." [Tr. 487.] A year after she diagnosed J.P. with Tourette's, Dr. Ramnivas again mentioned in a progress note dated January 10, 2019, that J.P. had Tourette's disorder and "Mother states he is having vocal tics and they are seen frequently. They are being seen on the medication and off the medication." [Tr. 620-21.]

Second, Vargas gave detailed testimony about J.P.'s Tourette's during the ALJ hearing:

> Now, when I brought him back to the doctor in September, I spoke to her about a condition where he has tics. He has tics going on. I took him to the doctor last because I thought something was in his throat. We took him to the ER. We took him to an outpatient. Then he was referred to a specialist. The specialist did not want to do anything for him, because he believed that there was nothing stuck in his throat. He believed that it was probably some type of condition developing because of his ADHD. So, finally when I talked to his psychiatrist, she told me that she believes that he is probably developing Tourette's. Either he's developing it on his own or the medication is causing it for him. So, she lowered his medication of the ADHD because it was causing [demonstrates noise] – you know. A really disturbing noise throughout the day, really disturbing to his classmates. And I was getting letters from the teacher. So, you know, I let them know – I took him to the doctor and I let them know his condition. We tried to give him a medication and Intuniv to help him. That medication failed because all it did was make him very depressed . . . . [When asked if once the medication was decreased, did that help the tics at all? Vargas answered:] No. I thought that it would help but he still has them. He'll still gets them occasionally. So, he has different ones. He was going like [demonstrates noise]. He's making like a gasping sound.

[Tr. 84-86.]

The ALJ ignored the evidence from J.P.'s psychiatrist that he was diagnosed with Tourette's and that she witnessed some of J.P.'s tics, as well as Vargas' lengthy and compelling testimony describing how J.P.'s involuntary sounds and facial tics affect his ability to successfully attend school. "[T]he ALJ was obligated to predicate his decision on all relevant evidence and to explain how he considered evidence favorable to Plaintiff." *Ruthann G. v. Andrew Saul*, No. 2:20-cv-252, 2021 WL 2349671, at * (N.D. Ind. June 9, 2021) (citing *Plessinger v. Berryhill*, 900 F.3d 909, 915 (7th Cir. 2018)). This omission is not harmless. As the Seventh Circuit has found, determination about the severity of an impairment also affects other determinations and thus, "no matter what happens at step two, a correct assessment remains important." *Farrell v. Astrue*, 692 F.3d 767, 772 (7th Cir. 2012). On remand, the ALJ should again assess whether J.P. has the severe impairment of Tourette's syndrome, making sure that he considers and addresses all of the relevant evidence, as well as examines the Tourette's syndrome when considering all of J.P.'s impairments in combination.

In addition, because the ALJ failed to evaluate whether J.P.'s Tourette's affected his ability to interact and relate with others [Tr. 60], the ALJ's finding that J.P. has a less than marked impairment in the domain of interacting and relating with others is not supported by substantial evidence in the record. In considering the functional equivalence for children, as I mentioned before, there are six domains to consider. With

7

regards to J.P.'s Tourette's, the domain which would seem to be potentially affected by this diagnosis is "interacting and relating with others." The rules specify that "[i]n this domain, we consider how well you initiate and sustain emotional connections with others, develop and use the language of your community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others." 20 C.F.R. § 416.926a(i). Interacting means "initiating and responding to exchanges with other people, for practical or social purposes" which includes "using facial expressions, gestures, actions or words." *Id.* § 416.926a(i)(1)(i). Relating to other people means "forming intimate relationships with family members and with friends who are your age." *Id.* § 416.926a(i)(1)(ii). It seems axiomatic that J.P.'s Tourette's syndrome could effect the way he communicates and interacts with others. *See* SSR 09-5p, 2009 WL 396026, at *2-7 (2009) ("[t]his domain includes all aspects of social interaction . . . When speaking in a conversation, a child must decide what to say and how to say it, using appropriate vocabulary and following the rules of grammar to communicate the intended message."). As such, on remand, the ALJ should specifically address how J.P.'s Tourette's syndrome impacts (or doesn't) his ability to interact and relate with others.

    Finally, I'll just briefly note that on remand the ALJ should also address J.P.'s insomnia when assessing the domain of attending and completing tasks. There is evidence in the record that J.P. has difficulty sleeping and insomnia. [Tr. 403, 456, 461,

467, 469, 491, 621.] While some medications like Melatonin might have helped minimally, Vargas testified at the hearing that J.P. had insomnia for the last couple of years and that J.P.'s doctor added a sleeping pill for J.P. because she thought maybe his sleep pattern was affecting his ability to focus. [Tr. 77, 84, 86.]

\*   \*   \*

Because I am remanding this case for the reasons stated above, I need not discuss the remaining issues raised by Vargas. She can raise those issues directly with the ALJ on remand.

## Conclusion

For the reasons set forth above, the Commissioner of Social Security's final decision is REVERSED and this case is REMANDED to the Social Security Administration for further proceedings consistent with this opinion.

SO ORDERED.

ENTERED: July 22, 2021.

　　　　　　　　　　　　　　　　 /s/ Philip P. Simon
　　　　　　　　　　　　　　　　PHILIP P. SIMON, JUDGE
　　　　　　　　　　　　　　　　UNITED STATES DISTRICT COURT